SAN ANTONIO GAS COMPANY V. B. F. ROBERTSON.

No. 888. Decided April 9, 1900.

**1. Master and Servant—Duty to Warn of Danger.**

The master is liable for injuries resulting from his neglect to warn the servant of danger only in cases presenting serious and unusual danger to a servant not so informed. (P. 507.)

**2. Same—Case Stated.**

A servant engaged in painting a hot engine with heated coal tar lost the sight of an eye into which hot tar spattered or popped. In the absence of proof that the occupation was peculiarly dangerous the injury afforded no evidence of a duty on the part of the master to warn against such danger, and did not justify a charge submitting the issue of the existence of such duty. (Pp. 506-508.)

**3. Assignment of Error.**

An assignment that a charge submitting the issue of liability in case defendant knew the work to be dangerous was improper, because the undisputed testimony showed that it was not dangerous, raises the question of the sufficiency of the evidence to authorize the submission of the issue of defendant's duty to give warning of danger. (Pp. 507, 508.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

*J. F. Onion,* for plaintiff in error.—The court erred in defining ordinary care to the jury, instructing them that "ordinary care is such care as an ordinary prudent person would use and exercise under like circumstances and conditions." Ordinary care and caution is such care and caution as an ordinarily prudent man would exercise under similar circumstances. Railway v. Beatty, 73 Texas, 596; City of Austin v. Ritz, 72 Texas, 402; Railway v. Sgalinski, 46 S. W. Rep., 113.

The court erred in refusing the fourth special requested instruction asked by defendant, as follows: "You are also further instructed that if you believe from the evidence that plaintiff was injured, and that such was the result of an unavoidable accident, then in that case plaintiff can not recover, and your verdict will be for defendant." Underwood v. Coolgrove, 59 Texas, 170; McGown v. Railway, 85 Texas, 292; Railway v. Casseday, 92 Texas, 525; Railway v. McGlamory, 89 Texas, 638.

The court erred in charging the jury, in substance, that if they believed plaintiff was ignorant or inexperienced in the work he was directed to do, and defendant knew this, and knew that the work was dangerous, then, that in the absence of a warning from defendant, plaintiff had a right to assume that the work was safe, etc., the undisputed testimony showing that the work was not dangerous, and that it required no previous experience to do the work with safety. Cannon v. Cannon, 66 Texas, 686; Denham v. Lumber Co., 73 Texas, 83; Currie v. Gunter, 77 Texas, 491.

*Nat B. Jones,* for defendant in error.—Those in charge of such business as this are presumed to know of its perils. Bailey, Master and

Servant, 112; Smith v. Car Works, 1 Am. St. R., 542; Wharton on Neg., sec. 214. "It was the duty of the defendant company to have known of the dangerous character and condition of the electric wires. The knowledge which they ought to have had, the law presumes, juris et de jure, they had. Even had the company's representatives sworn that they did not know of the same, such ignorance on their part would not have exonerated them. A superior is presumed to know, and in law knows, that which it is his duty to know, namely, whatever may endanger the person and life of his employe in the discharge of his duties." Myhan v. L. & P. Co., 7 L. R. A., 172; Stucke v. Railway, 23 So. Rep., 342.

But not only is the master conclusively presumed to know of such danger as this; he is bound to know it. Master is bound to know (59 Texas, 259; 13 S. W. Rep., 63, 67; Wood, Master and Servant, sec. 376) of latent or secret dangers if discoverable by ordinary care, for omission of ordinary care, culpability, is knowledge (8 S. W. Rep., 673), and servant is not to hunt for them (71 Texas, 347), but has right to presume that there are none, or master would have discovered and disclosed them.

Here ordinary care means care commensurate with risk and danger. Wood, Master and Servant, secs. 687, 706, 347, 359, 376, 356; Shearm. & Redf. on Neg., sec. 217; 21 S. W. Rep., 422; Bailey, Master and Servant, 37, and note; 2 Sayles' Civ. Dig., p. 1263, prop. 17356; Railway v. McNamara, 59 Texas, 255; Railway v. Crenshaw, 9 S. W. Rep., 262; Railway v. Wells, 16 S. W. Rep., 1027; Myhan v. L. & P. Co., 7 L. R. A., 172; Bonnet v. Railway, 33 S. W. Rep., 334.

By knowledge, in the above statement, is meant both what the master actually knows, and what it is negligence not to know. He is bound to know what can be discovered by inspection, tests, and oversight. Railway v. Silliphant, 8 S. W. Rep., 673; Beach, Cont. Neg., secs. 367, 359; Smith v. Iron Co., 36 Am. Rep., 541; Wood, Master and Servant, sec. 326, p. 680.

Thus, where defendant hauled from Palestine to Tyler a foreign car, coupling of which was dangerous by reason of unusual construction of deadwoods or buffers, it was held that "it was the duty of the defendant to know that they were so (dangerous) and to warn the plaintiff of the increased danger he was subjected to in handling of the car." Railway v. White, 13 S. W. Rep., 65.

Proof of no prior popping out or bumping of the tar does not prove or tend to prove that there was no negligence in this case. Railway v. Kemper, 53 N. E. Rep., 931; 16 Am. and Eng. Enc. of Law, 457. On the contrary, the fact, if such it be, that no accident had ever occurred before, is presumptive proof of negligence in this case. In other words, the fact that the casualty has not occurred before, and is unusual, is presumptive evidence of negligence. Res ipsa loquitur. McCray v. Railway, 89 Texas, 168; Washington v. Railway, 90 Texas, 314.

Here are some illustrations of this rule: 1. Car jumping track is evidence of negligence, because, being unusual, it argues a want of care.

90 Texas, 314. 2. Barrel rolling out of house and injuring party on sidewalk, is unusual, and raises a presumption of negligence. 89 Texas, 171. 3. Boiler exploding is unusual and evidence of negligence. 89 Texas, 172. 4. For same reason, gas escaping is evidence of negligence. Shearm. & Redf. on Neg., sec. 697. 5. So where ties fell off car and struck bystander. 89 Texas, 172. 6. So where iron rail fell off front car and swept party off next flat car behind. 89 Texas, 172. 7. So where brick became detached and fell off of wall and injured a passer-by. Shearm. & Redf. on Neg., sec. 60. 8. So the falling of a sign into a public street is evidence of negligence. Volkmar v. Railway, 134 N. Y., 418, and brief to Reynolds v. Van Beuren, 42 L. R. A., 129. So, in this case, the fact, if it be a fact (but it is not), that tar never popped out before, shows that the heating of the tar to a less temperature than that of the surface to which it was applied, caused the bumping or popping out; or that different tar was used; or that surface was hotter than on former occasion, and decomposed the tar.

This case is very much like the following cases, in all of which the master was held liable: Smith v. Car Works, 1 Am. St. Rep., 542, where servant was injured by explosion from molten metal coming in contact with water; Fox v. Penn., etc., Works, 48 N. W. Rep., 203, where servant was poisoned from making paris green; McGowan v. M. Co., 9 Fed. Rep., 861, where servant was injured from bringing hot slag in contact with snow, resulting in an explosion; Mather v. Rillston, 156 U. S., 391, where dynamite cartridges were exploded by heat and jarring; Burke v. Anderson, 69 Fed. Rep., 814, where master tore up ground by exploding dynamite cartridges, one of which was not discharged and was struck by servant with a pick while digging, when it exploded and injured him; Vitto v. Farley, 36 N. Y. Supp., 1105, where an improperly tamped blast was discharged and injured servant; Ryan v. Ice Co., 32 L. R. A., 524, where soda generator exploded and injured servant; Holland v. Railway, 12 L. R. A., 232, where servant punctured a puddle of iron, which caused an explosion; Parkhurst v. Johnson, 45 Am. Rep., 28, where lime-kiln on which servant was at work subsided; Davidson v. Cornell, 30 N. E. Rep., 573, where elevated railroad fell from want of braces and girders; Galveston Oil Co. v. Thompson, 76 Texas, 235, servant caught on protruding bolts of revolving shaft; Palmer v. Gordon, 53 N. E. Rep., 909, where water thrown on hot stove popped off and hurt boy.

In none of these cases was it proven that the master knew the danger, yet the master was holden because the danger was a matter known to science. As this court said in the White case (Railway v. White, 13 S. W. Rep., 65): "It was the duty of the defendant to know the danger." On this point, I specially call the court's attention to what is said in Ryan v. Ice Company, 32 L. R. A., 524, where the master was held liable for injuries caused by the explosion of a generator, under a pressure much less than that it sustained the day before.

WILLIAMS, Associate Justice.—Plaintiff in error, at the time of the occurrence in question, was engaged in manufacturing from coal, gas and its by-products, including coal tar. Defendant in error had been employed as helper to render such service about the works as should be assigned to him. He was ordered by the vice-principal of plaintiff in error to paint a boiler, which was hot, with coal tar manufactured in the business, and was instructed to heat the tar so that it might be the better applied. He heated the tar and was engaged in spreading it with a paint brush upon a part of the boiler higher than his head when some of the tar popped into his eye, burning it and eventually causing the loss of it. Defendant in error had never before done such work and was ignorant of any danger of such an occurrence. Coal tar is proper material with which to paint boilers and there was nothing to show any unfitness in that which was used on this occasion, the sole complaint being that the vice-principal failed to properly instruct the servant in the use of it, and to so advise him concerning the risk to be incurred as to enable him to protect himself.

The vice-principal himself was ignorant of any such danger and there was no evidence of such an accident ever having happened before, although it appeared that coal tar was commonly used for such purposes. There was evidence which tended to show that the popping of the tar may have resulted from inequality between its temperature and that of the surface to which it was applied, causing some of its constituents to suddenly boil and generate vapors, which, in escaping, threw out the tar.

Testimony of experts was introduced tending to show that coal tar, when spread upon surfaces hot enough to cause some of its constituents to boil, would spatter, and this is probably what happened when defendant in error was hurt, if his injury occurred as he states. There is no evidence to show the existence of danger in the painting of the boiler greater than that which might result from such spattering or "bumping" of the tar; and none tending to show previous injury to any one from such a cause. The work of painting is often done by inexperienced men, and those having practical experience with it did not regard it as dangerous.

The question which we have to decide is, whether or not there are any facts upon which it can be held that the master neglected a duty and was guilty of negligence when it failed to notify the servant of the probability of the popping of the tar and to instruct him how to prevent its occurrence or protect himself against injury from it. It seems quite plain that the risk to the servant was not of such a character as to require any such precaution on the part of the master. Such risk was not greater than almost every servant, whether experienced or inexperienced, incurs in any service, nor greater, indeed, than almost every one often incurs in pursuing an avocation of any character.

The case does not come within the principle, so often declared, that the master engaged in a dangerous business must not expose an inex-

perienced servant to the hazards of it without warning of their existence and instruction as to the means of avoiding them.. In all of the cases in which this principle has been enforced, the work which the servant was put to doing was attended with great and unusual danger, to guard against which special knowledge on his part was required. The master, in engaging the servant in such work, was exposing him to constant risk of serious injury, of which the master was or ought to have been aware and the servant ignorant, and hence the omission of the master to take reasonable precautions to guard the servant against such dangers was a failure to exercise that ordinary care and foresight for the protection of the servant which the law exacts. This failure to exercise ordinary care was the reason for the master's liability. In every cited case and in every authority which we have found, this element of serious and unusual danger to a servant uninformed as to its existence was present. No authority has been found and we think no sound one can exist in which the duty to warn and instruct the servant arises where no unusual or extraordinary danger is to be encountered. That there was no such danger in spreading coal tar upon a boiler appears obvious. Such risk as there was is of the same nature as that which every cook using stoves and cooking utensils, in connection with water or grease, incurs. It was not greater than the farm hand incurs in handling the simple tools with which he performs his labor. That a serious injury was inflicted does not prove that the work was more than ordinarily dangerous, for there is scarcely a business or situation in which one may not, without negligence in any quarter, receive a serious injury to so delicate an organ as the eye. Such injuries do not, however, generally happen from ordinary risks, and hence where only ordinary risks are to be incurred, they are not to be anticipated and provided against. Such was the only risk which defendant in error incurred; and it would be carrying to a dangerous extreme the humane and salutary principle of the law to which we have referred to apply it to a situation like this, since it would well nigh make the master an insurer of the safety of the servant. The language of Chief Justice Campbell in his dissenting opinion in Smith v. Peninsular Works, 60 Michigan, 501, is especially applicable, as well as true: "No rule could be a safe one which would render it unsafe for persons to employ others to aid them. The cases that generally come up arise where the employment is upon a considerable scale and it is supposed that the employer can afford to lose better than the person employed; but the principle, if correct, will apply as forcibly to domestic service and small industries as to any other."

The charge of the court which is attacked in the fifth assignment of error perhaps correctly stated the duty of the master to warn inexperienced servants of the dangers of the business, had the rule on that subject been applicable to the facts; but its error consisted in the assumption that there was a state of facts to which it might apply. The assignment attacking the charge on the ground that there was no evidence

to warrant it, sufficiently raises the question which we have discussed.

There being no evidence to sustain the recovery, the judgments of the District Court and Court of Civil Appeals are reversed and the cause remanded.

*Reversed and remanded.*